879 P.2d 513

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Barton J. ADAMS, Defendant–Appellant.**

**No. 16721.**

Supreme Court of Hawai'i.

Aug. 29, 1994.

Faced with a 21–count indictment for medical assistance (Medicaid) fraud and theft, Adams agreed to plead no contest to one count of Medicaid fraud in violation of Hawai'i Revised Statutes (HRS) § 346–43.5 (1985) in exchange for, *inter alia,* the State's promise to "stand silent ... and not oppose" his requests for a deferred acceptance of his no contest plea (DANC) and for no jail time. Claiming that the State breached the plea agreement when it submitted a sharply critical seven-page "statement" to the Adult Probation Division (APD), Adams unsuccessfully sought to withdraw his plea. For the reasons set forth below, we vacate the circuit court's denial of Adams's motion to withdraw his plea and remand for entry of an order granting the motion.

## I. *FACTS*

On May 4, 1990, Adams, an osteopathic physician practicing in Maui, was indicted on twenty counts of Medicaid fraud in violation of HRS § 346–43.5 (1985) and one count of theft in the second degree in violation of HRS § 708–831(1)(b) (Supp.1992). The fraud charges were based on Adams's billing the Hawai'i Medicaid Program for services he allegedly did not render, and Adams was charged with theft because he allegedly received $2,943.75 for some of these billings. On February 27, 1992, pursuant to a plea agreement, Adams pleaded no contest to one of the Medicaid fraud counts.[1] The relevant paragraph of the plea agreement as set forth by Adams's attorney, Anthony Rankin, in a February 5, 1992 letter to Deputy Attorney General Richard Schwab, is as follows:

> 4. Defense counsel will request that the Court defer acceptance of Defendant's No Contest plea, upon the above conditions and any others the Court deems appropriate, and will further ask that the Defendant not receive a jail term. The State will stand silent on these issues and not oppose Defendant's requests.

After entry of the no contest plea, the circuit court ordered a pre-sentence investigation to be performed by the APD. At

Lynn Hodgson Park, Dewey H. Kim, Jr. and Joanne L. Ha'o, Deputy Attys. Gen., Honolulu, for plaintiff-appellee.

Renee M.L. Yuen (Richard K. Perkins with her on the briefs, of Yuen & Perkins), Honolulu, for defendant-appellant.

Before MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, JJ., and Circuit Court Judge AIONA in Place of RAMIL, J., Recused.

KLEIN, Justice.

This appeal involves a plea agreement entered into between defendant-appellant Barton J. Adams and the State of Hawai'i.

1. The count to which Adams pleaded no contest involved Adams's billing for an AIDS test that allegedly was never completed. Adams apparently informed the patient that the test was negative.

some point, the APD asked Schwab to provide: (1) police reports prepared during investigation of the case; (2) advice concerning to whom restitution should be paid; and (3) general input regarding preparation of the pre-sentence report. Schwab forwarded a 180–page investigation report, instructions regarding restitution, and a seven-page "statement" (the written statement) concerning Adams. Among other things, Schwab averred in the written statement that (1) Adams had been charged with just "twenty-one of the hundreds of false claims available;" (2) Adams's "sexual assaultive behavior" stemmed from his "extremely low opinion of women;" (3) Adams is "a danger to the community because of his propensity to claim that he renders medical services he is not qualified to perform and his overwhelming desire to generate bills that precludes any interest in patients to overcome their illnesses;" and (4) Adams falsely claimed to be destitute in order to have a defense attorney provided at taxpayer expense. Schwab's written statement was attached to the APD's pre-sentence report and forwarded to the court.

On May 13, 1992, the court conducted a sentencing hearing at which Adams orally moved to withdraw his no contest plea on several grounds. Adams claimed, *inter alia,* that he was under severe emotional distress and intoxicated when he entered his plea, and that he was misled as to, and had miscalculated, the severity of the potential penalty. Adams did not comment on the propriety of the written statement. The court denied the motion, and proceeded with the sentencing hearing. When later asked if he had anything to add, Schwab responded:

Since we've made the plea agreement, we will not oppose the recommendations of, or we will stand silent regarding jail. I think that the presentence report pretty much sets forth the position of the State unless the Court has any questions.

The court then concluded:

Well, I am concerned about the defendant's character. I think the presentence report certainly indicates a doctor who is not concerned about his patients, is concerned almost entirely about making mon-

ey, and extracting as much money as he can from the system....

I think that the nature of this offense together with the plea—with the presentence report certainly suggests that a prison term should be imposed....

I will impose the five year indeterminate term provided by law.... I think that the five year term is richly deserved in this case.

The sentence was made to run concurrently with a ten-year jail term imposed on Adams for separate sexual assault convictions. Judgment was entered on May 15, 1992.

On May 22, 1992, Adams moved the court to reconsider its denial of his pre-sentence motion to withdraw his plea, again claiming that his plea was not entered into knowingly and voluntarily. During the hearing on the motion on May 27, 1992, the court granted Adams's request for an evidentiary hearing on the validity of his plea. At the hearing, Adams did not contest the appropriateness of the written statement; rather, the testimony focused primarily on whether Adams had been informed that jail time could be imposed if he pleaded no contest. When it became evident that both Schwab and Rankin were witnesses on the issue, the court continued the hearing to a later date and granted Rankin's oral motion to withdraw as counsel.

On August 18, 1992, Adams filed a supplemental memorandum in support of the motion to reconsider, alleging for the first time that the State had violated a material term of the plea agreement by submitting the written statement to the APD. Adams contended that the written statement was submitted by Schwab specifically for inclusion in the presentence report and that the substance of the statement clearly violated the terms of the plea agreement. At the close of the hearing on the motion of October 30, 1992, the court expressed concern over the impact of the written statement, but stated:

I admit the question is close here, but I did not think the agreement was violated in this case.

The court notes that in every case, really, it needs and must know the circum-

stances surrounding the charges.... And that is essentially what happened here.

But alternatively, and even if I did feel that the plea agreement had been violated by Mr. Schwab, the remedy in this Court's mind should be resentencing before a different judge. And in light of the fact which the Court would judicially notice that the defendant is under a sentence to a term of imprisonment, neither I nor any other judge can do anything else but impose the five-year term under the provisions of [HRS] section 706–629. For those reasons I'll deny the motion.

On November 27, 1992, the circuit court entered its Findings of Fact and Conclusions of Law and Order denying Adams's motion to reconsider. Adams filed a timely notice of appeal on December 23, 1992.

## II. *STANDARD OF REVIEW*

 Hawai‘i Rules of Penal Procedure (HRPP) 32(d) provides:

**Withdrawal of a Plea of Guilty.** A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his plea.

This court has observed that a liberal approach is to be taken when a motion to withdraw a plea is made under HRPP 32(d) before sentence is imposed. The court should grant the motion if the defendant has presented a fair and just reason for his request and the State has not relied upon the plea to its substantial prejudice. However, when the motion is made after the sentence has been imposed, only a showing of manifest injustice will entitle the defendant to withdraw his or her plea. In either instance, the trial court's denial of the request is reviewed

for abuse of discretion. *State v. Smith*, 61 Haw. 522, 523, 606 P.2d 86, 88 (1980).

An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 (citation omitted), *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992). One such rule is HRPP 11(e)(2) which provides in pertinent part that "[f]ailure by the prosecutor to comply with ... [a plea] agreement shall be grounds for withdrawal of the plea."

The trial court's determination as to whether the prosecutor failed to comply with a plea agreement will depend on its interpretation of the meaning of that agreement. "A dispute over the meaning of a plea agreement involves questions of fact, and an appellate court's examination of factual determinations rendered below is governed by the 'clearly erroneous' standard." *State v. Yoon*, 66 Haw. 342, 349, 662 P.2d 1112, 1117 (1983) (citations omitted). A factual finding "is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." *State v. Furutani*, 76 Hawai‘i 172, 179, 873 P.2d 51, 58 (1994) (citations omitted).

## III. *DISCUSSION*

Adams argues that he should have been allowed to withdraw his plea after sentencing because the State breached its promise to stand silent regarding his requests for DANC and for no jail time when it submitted the written statement to the APD and then adopted the APD's pre-sentence report as its position at the sentencing hearing.[2] In particular, Adams claims that the State breached paragraph 4 of the plea agreement.

---

2. The circuit court clearly acted within its discretion initially in denying Adams's pre-sentence motion to withdraw his no contest plea. The transcript of the proceedings confirms that the court sufficiently questioned Adams regarding his mental state and understanding of the plea agreement, including the possibility that up to five years of jail time could be imposed. Fur-

thermore, Adams presented no credible evidence at the evidentiary hearings subsequent to the entry of the plea to support his claims that he was intoxicated or emotionally distraught, or that he did not fully understand the potential jail term that could be imposed. Regardless, Adams has not raised these issues on appeal.

## A. *The State breached the plea agreement*

A plea agreement is essentially a contract entered into between the State and the defendant, in which the defendant agrees to plead guilty or no contest to a charge and to forego certain constitutional rights (including the right to trial) in exchange for which the State promises some form of leniency or cooperation in prosecution. Indeed, courts have often looked to contract law analogies in determining the rights and obligations of the parties to a plea agreement. *See Yoon*, 66 Haw. at 348, 662 P.2d at 1116. However, because the plea negotiation process implicates constitutional considerations—including the fairness and voluntariness of the plea— we have recognized that resort to contract principles cannot solely be determinative of the rights and duties comprising the plea bargain. *Id.* at 348–49, 662 P.2d at 1116.

On November 27, 1992, the circuit court entered its Findings of Fact (FOF) and Conclusions of Law (COL) and Order denying Adams's motion to reconsider. Relevant here are the following FOF:

7. During the plea negotiations between the DEFENDANT and the State of Hawai['ji, neither the DEFENDANT nor his attorney, Anthony Rankin, Esq., ever requested that the State of Hawai['ji be prohibited from responding to any inquiries or questions of the Adult Probation Department during the preparation of the Pre–Sentence Investigation Report (hereinafter "PSI REPORT");

8. During the plea negotiations between the DEFENDANT and the State of Hawai['ji, the State of Hawai['ji never represented that as part of any plea negotiation or deal that it would be precluded from responding to any inquiries or questions submitted by the Adult Probation Department for purposes of the PSI REPORT;

\* \* \* \* \* \*

10. The terms of the Plea Deal never stated that the State of Hawai['ji was prohibited from responding to any inquiries or questions submitted by the Adult Proba-

tion Department for purposes of the preparation of the PSI REPORT;

\* \* \* \* \* \*

23. At the Sentencing Hearing on May 13, 1992, the State of Hawai['ji did not ask for any prison/jail sentence nor oppose the Defendant's Deferred Motion For No–Contest Plea, but in fact, stood silent on these issues[.]

Although FOF 7, 8, and 10 essentially assert only that the State never expressly promised that it would not communicate with the APD regarding the pre-sentence report, viewed in light of the circuit court's ultimate ruling on the motion, they amount to a finding that such a promise was not implied in the plea agreement. This finding is clearly erroneous.

Pursuant to the plea bargain, the State agreed to "stand silent ... and not oppose" Adams's requests for DANC and for no jail time. No parameters were placed on the State's obligation; *i.e.,* the agreement did not provide that the State would stand silent only at the sentencing hearing. Based on the terms of the agreement, however, it is unreasonable to believe that Adams relinquished his constitutional rights in exchange for the State's promise to refrain from recommending a sentence or opposing his requests in open court, although the State would be free to do so through the APD. Although it appears that the parties never explicitly considered the precise issue, it is far more reasonable to conclude that the State's promise to "stand silent" on the matters of jail and DANC meant that the State would not take a *position* on the issues or make that position known to the court directly or indirectly.

The case of *United States v. Cook*, 668 F.2d 317 (7th Cir.1982), lends support to this interpretation of the State's promise. In that case, the court interpreted the prosecution's promise to "make no recommendation whatsoever as to any possible punishment ... [and] not to offer anything at all in aggravation" of the defendant's sentence. The court determined that the prosecution breached the agreement when it permitted the probation officer assigned to the case to obtain information of an aggravating nature from the prosecution's file for use in the pre-

sentence report to the court. The court concluded that to construe the promise to permit the prosecution's conduct would "render the Government's promise practically meaningless[,] since it would allow the Government to accomplish indirectly what it had promised not to do directly." *Cook*, 668 F.2d at 321.[3] *See also Wood v. Commonwealth*, 469 S.W.2d 765, 766 (Ky.1971) ("We have little tolerance for the argument of the prosecuting attorney that his promise not to 'oppose or favor' probation at the hearing did not preclude him from privately registering his opposition to probation with the trial court through the probation officer."); *United States v. Anderson*, 970 F.2d 602, 608 n. 8 (9th Cir. 1992) (in making plea agreements, "[t]he government must expressly reserve its right to disclose the 'truth' about a defendant's activities").

In the instant case, the State clearly attempted "to accomplish indirectly what it had promised not to do directly." Significantly, the subject areas covered in the written statement parallel several important factors which a court considers in sentencing. HRS § 706–621 (Supp.1992) provides in pertinent part:

> **Factors to be considered in imposing a term of probation** .... (2) The following factors [shall] be accorded weight in favor of withholding a sentence of imprisonment:
>
> * * * * * *
>
> (e) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime;

(f) The defendant's criminal conduct was the result of circumstances unlikely to recur;

(g) The character and attitudes of the defendant indicated that the defendant is unlikely to commit another crime;

(h) The defendant is particularly likely to respond affirmatively to a program of restitution or a probationary program ....

The headings in the written statement, such as "MULTIPLICITY OF OFFENSES," "SEXUAL ASSAULTIVE BEHAVIOR," "MULTIPLICITY OF SCHEMES," "PROBABILITY OF REHABILITATION," and "DANGER TO COMMUNITY," are each closely aligned with the above factors. Schwab admitted that he was aware that the APD would use the written statement in preparing the pre-sentence report, and that the court in turn would rely on the report in deciding what sentence was appropriate. When the State took the clear position in the written statement that Adams was not appropriate for probation or DANC and submitted that statement to the APD, the State breached the plea agreement.[4]

The State further compounded its breach of the plea agreement at the sentencing hearing when Schwab expressly adopted the pre-sentence report knowing that the statement was attached. Specifically, Schwab stated, "I think that the presentence report pretty much sets forth the position of the State ...." Asserting that the State's position was set forth in the pre-sentence report, which included the written statement, was tantamount to voicing the State's opposition to Adams's requests. Thus, the circuit court

---

**3.** In *Cook*, the court distinguished a Fifth Circuit case, *United States v. Avery*, 621 F.2d 214 (5th Cir.1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981), where the prosecution had promised only "that *at the time of sentence* [it would] *make no recommendation and stand mute*." The court there had determined that the scope of the prosecution's obligation was limited and found no breach when the prosecution responded to a probation officer's inquiries in preparation of the pre-sentence report. *Avery*, 621 F.2d at 216. In *Cook*, on the other hand, the court did not find any such limitations in the prosecution's promise.

**4.** The State has argued that accepting Adams's definition of "stand silent" would severely impair the function of the APD. Adams, however, does not contend that the plea agreement was breached when the State forwarded the 180–page investigation report or provided information regarding restitution to the APD. Adams's sole complaint in this appeal is that the State breached the plea agreement when the State argued in its written statement, in response to the APD's request for general "input," that Adams was inappropriate for probation. Under these circumstances, the State's fear that the APD would not be able to prepare an adequate report is not well founded.

erred in concluding that the State did not breach the plea agreement.

## B. *Adams is entitled to withdraw his no contest plea*

■ As noted above, "to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his plea." HRPP 32(d). It is well settled that the terms of a plea agreement, which serve as the inducement for entering a plea, must be fulfilled. *State v. Costa,* 64 Haw. 564, 566, 644 P.2d 1329, 1331 (1982); *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Indeed, due process requires that the State uphold its end of the bargain. *State v. Yoon,* 66 Haw. 342, 347, 662 P.2d 1112, 1115 (1983). And where a defendant is denied due process because the prosecution violates a plea agreement, "there is 'manifest injustice' as a matter of law," and the defendant "is entitled to withdraw his guilty plea." *United States v. Crusco,* 536 F.2d 21, 26–27 (3d Cir.1976) (applying Federal Rules of Criminal Procedure 32(d), which is identical to HRPP 32(d)); *see also Tillman v. State,* 522 So.2d 14, 16 (Fla.1988). In Hawai'i, this position is expressly set forth in HRPP 11(e)(2), which provides that "[f]ailure by the prosecutor to comply with ... [a plea] agreement *shall be grounds* for withdrawal of the plea." (Emphasis added.) As the Supreme Court of Nebraska recently said:

> Where a defendant's plea of guilty or nolo contendere is made in reliance on an unfulfilled promise by the prosecutor to make a favorable sentence recommendation or to remain silent as to sentencing, the courts generally permit withdrawal of the plea, even after sentencing.

*State v. Shepherd,* 235 Neb. 426, 428, 455 N.W.2d 566, 568 (1990) (citation omitted); *see also State v. Howard,* 110 N.J. 113, 122, 539 A.2d 1203, 1208 (1988).

The State cites *State v. Waiau,* 60 Haw. 93, 588 P.2d 412 (1978), and *State v.*

*Anderson,* 4 Haw.App. 102, 661 P.2d 716 (1983), for the proposition that the appropriate remedy, if any, is to remand for resentencing before another judge. In *Anderson,* the defendant unsuccessfully moved to withdraw his plea after the State opposed his motion for deferred acceptance of his guilty plea. The Intermediate Court of Appeals (ICA) held that the State's conduct breached the plea agreement and, citing *Waiau* without comment, held that resentencing before another judge was the proper remedy. 4 Haw.App. at 114, 661 P.2d at 724. *Anderson,* however, misconstrued our holding in *Waiau.* It is true that in *Waiau* this court remedied the breach of a similar plea agreement by ordering resentencing. However, we expressly noted that the defendant there had not requested withdrawal of his plea, in the trial court proceedings or on appeal, but instead requested to be resentenced. 60 Haw. at 97–98, 588 P.2d at 415. We explained that

> [s]ince appellant can be given the benefit of the plea agreement and has not sought to withdraw the plea, we have no occasion to consider whether any circumstances may exist which would support a motion to withdraw the plea, should such a motion be filed by appellant on remand.

*Id.* at 99, 588 P.2d at 416.

■ We now hold that either resentencing or withdrawal of a plea may be the appropriate remedy depending on the defendant's particular circumstances.[5] In considering which remedy is appropriate, the trial court should give considerable weight to the choice of the defendant. "[A] court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State." *Santobello,* 404 U.S. at 267, 92 S.Ct. at 501 (Douglas, J., concurring). Other factors to be considered include the timeliness of the motion, the ex-

---

5. Of course, a defendant who elects to have a violated plea agreement rescinded must plead again to all charges in the original indictment. *See Miller v. State,* 272 Md. 249, 255–56, 322 A.2d 527, 531 (1974); *Cook,* 668 F.2d at 322; *State v. Howard,* 110 N.J. at 122, 539 A.2d at

1208 ("When the State fails to abide by the terms of the bargain, the remedy is either to vacate the plea and permit the defendant to plead anew or to require the State to take whatever steps are necessary to carry out the agreement." (Citation omitted.)).

tent of the breach, the prejudice to the parties, and which alternative will best serve the effective administration of justice. Moreover, either alternative may be unsuitable due to new information or changed circumstances since the defendant entered into the plea agreement.

■ Under the circumstances of the present case, it seems clear that although Adams's motion to withdraw his plea came after sentencing, HRPP 11(e)(2) and 32(d) entitle Adams to obtain either resentencing, or withdrawal of his plea. As the trial court correctly noted in this case, resentencing is not a viable option for Adams. Following his conviction for sexual assault, Adams is not eligible for probation, *see* HRS § 706–629(2) (Supp.1992),[6] and thus any judge would have to impose the five-year term mandated by HRS § 706–660(2) (Supp.1992)[7]; furthermore, he is no longer eligible for a DANC under HRS § 853–4(6) (1985).[8] Therefore, specific performance of the plea agreement is not a meaningful alternative. Consequently, the circuit court abused its discretion in denying Adams's post-sentence motion to withdraw his plea.

## IV. CONCLUSION

Because the State breached the plea agreement which had induced Adams's no contest plea, we vacate the circuit court's order denying Adams's post-sentence motion to withdraw his plea and remand for entry of an order vacating his sentence and granting the motion.

---

6. HRS § 706–629(2) provides in relevant part:

When a defendant, already under sentence, is convicted for another crime committed prior to the former disposition:

(a) The court shall not sentence to probation a defendant who is under sentence of imprisonment with more than six months to run[.]

7. HRS § 706–660 provides in relevant part:

A person who has been convicted of a class B or class C felony may be sentenced to an indeterminate term of imprisonment.... When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:

. . . . .

(2) For a class C felony—5 years.

8. HRS § 853–4(6) provides in relevant part:

This chapter [Criminal Procedure: Deferred Acceptance of Guilty Plea, Nolo Contendere Plea] shall ·not apply when:

. . . . .

(6) The defendant has been convicted of any offense defined as a felony by the Hawai['i] Penal Code....