23 P.3d 733

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Timothy P. FOGEL, Defendant–Appellant.**

No. 22887.

Supreme Court of Hawai'i.

May 25, 2001.

Taryn R. Tomasa, Deputy Public Defender, on the briefs, for defendant-appellant.

Bryan K. Sano, Deputy Prosecuting Attorney, City & County of Honolulu, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We hold that, to avoid manifest injustice, the conviction and sentence of Defendant–Appellant Timothy P. Fogel (Defendant) must be vacated because his plea was induced by the expressed inclination of the first circuit court (the court) to defer acceptance of his no-contest plea. Inasmuch as Defendant pled after trial had commenced, he was not eligible, under Hawai'i Revised Statutes (HRS) § 853-1 (1993 & Supp.2000), for a plea deferral, and, on remand, the only remedy available to him is the withdrawal of his plea.

I.

Defendant was charged in a February 3, 1999 complaint with burglary in the first degree, HRS § 708–810(1)(c) (1993).[1] On

February 11, 1999, Defendant pled not guilty as charged.

The case proceeded to trial on May 11, 1999. Plaintiff–Appellee State of Hawai'i (the prosecution) asserted that Defendant intended to commit a crime against a person or property.[2] Defendant maintained that a misunderstanding occurred when he entered his ex-girlfriend's home for the purpose of retrieving his belongings.

Defendant's ex-girlfriend, Susan Heatherly, testified that she and Defendant had not been happy together and in October 1998, the two had decided to end their relationship. However, even after this point they continued, at times, to live together.

Heatherly also invited Defendant to assist her in her home cleaning business. On January 21, 1999, Defendant helped Heatherly clean a home and later walked back to Heatherly's house where his car was parked. Defendant had spent the previous night with Heatherly and planned to work on the car's carburetor at her house while she was busy on other errands.

When Heatherly returned home, she ate dinner with Defendant. Later the two argued. Heatherly left the house at two different times because she "didn't want to have a fight with [Defendant]." Upon returning home the second time, the argument escalated. Defendant, thinking his backpack was in the house, screamed at Heatherly, "[Y]ou have my backpack, give me back my backpack." Heatherly knew Defendant carried a backpack but did not know where it was located. Defendant "picked up [Heatherly's televison] remote control [and] ... keys [on] the coffee table, ... [a]nd ... ran out the front ... door of [her] house," "yelling louder and louder and louder."

Heatherly testified that the keys Defendant took belonged to her. While Defendant remained outside the house, he yelled,

1. HRS § 708–810(1)(c) states:
     **Burglary in the first degree.** (1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:
     . . . .

     (c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

2. It is difficult to discern what constituted the underlying crime Defendant is charged to have intended to commit. No bill of particulars was filed.

"[G]ive me back my backpack or you can't have this [remote]." Heatherly then called the police. The police arrived, quieted Defendant down, and took him away from the house.

Defendant later returned. He pounded on the window next to Heatherly's bed and yelled for the return of his backpack. Defendant then proceeded to "come through the . . . [front] door." At this point the two struggled over Heatherly's telephone and cell phone as she attempted to call the police. Defendant forcefully took both phones away from her. The police again returned, but Defendant had already left with the phones and the keys. The next morning police returned the items to Heatherly.

When asked about the car she drove, Heatherly related that she "had a Nissan and [presently has] a Ford." Apparently, Defendant's backpack had been in Heatherly's car. However, she maintained she did not know it was in the car or intend to deprive Defendant of the backpack.

At this point in the trial, defense counsel approached the bench to inform the court that the keys, purportedly taken by Defendant, were not the same as those in Heatherly's possession. The court dismissed the jury for the day and commenced a hearing on defense counsel's request that Heatherly's keys and key chain be retained in court overnight. Heatherly was questioned about a General Motors (GM) key on her key ring and responded that the GM key was used to unlock the door to the Ford vehicle.

Defense counsel then requested the court to "preserve[ ]" the key chain, asserting that Heatherly's credibility would be undermined by the fact that she did not know the key

chain contained a hidden ballpoint pen. Apparently counsel believed this would prove that the keys did not belong to her. The court allowed Heatherly to keep her keys, but retained custody of the key chain.

## II.

### A.

On May 12, 1999, Defendant changed his plea to no contest to the charge and orally moved the court for a deferred acceptance of his plea pursuant to HRS § 853-1. The court engaged in a colloquy with Defendant to ensure his change was knowingly, voluntarily, and intelligently entered pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 11.[3] No express factual basis for the plea was articulated. However, the court said it had "heard sufficient evidence" as set forth *supra*, to find there was "a factual basis for the plea." In taking Defendant's plea, the court informed Defendant it "intend[ed] to allow [Defendant] to have a deferred . . . acceptance of [his] no contest plea":

Q. [THE COURT]: Is anyone forcing you to plead no contest?

A. [DEFENDANT]: No. No, sir.

Q. I did state to your attorney that I'm inclined to issue a term of deferral or probationary term of no more than three years, and that *I intend to allow you to have a deferred acceptance of that no contest plea.*

*Have you been promised anything else by anyone in exchange for this plea?*

A. No, sir.

(Emphasis added.)

The prosecution requested, and the court agreed, that the plea form "specify that there

---

3. HRPP Rule 11 states in relevant part as follows:

**Rule 11. PLEAS.**

(c) **Advice to Defendant.** The court shall not accept a plea of guilty or *nolo contendere* without first addressing the defendant personally in open court and determining that he [or she] understands the following:

. . . .

(4) that if he [or she] pleads guilty or *nolo contendere* there will not be a further trial of any kind, so that by pleading guilty or *nolo contendere* he [or she] waives the right to a trial; and

. . . .

(d) **Insuring that the Plea is Voluntary.** The court shall not accept a plea of guilty or *nolo contendere* without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or *nolo contendere* results from any plea agreement.

is no plea agreement with the State." Defendant initialed the amendment. Item No. 9 of the Guilty Plea/No Contest form, the provision apparently amended, referred to a "[c]hambers conference":

9. I have not been promised any kind of deal or favor or leniency by anyone for my plea, except that I have been told that the government has agreed as follows: (If None, Write None)

*Chambers conference.* No plea agreement with the State. TF

(Emphasis added.) The court then found that

Defendant did knowingly, voluntarily, intelligently enter his plea of no contest with an understanding of the charge [against him] and the consequence of his plea. Court also finds it [sic] is a factual basis. Court will accept an oral motion for deferred acceptance of no contest [ (DANC) ] plea.

Sentencing for Defendant was set for July 12, 1999, which was subsequently continued by the court to August 19, 1999.

### B.

On May 13, 1999, Defendant was released from custody. The following day, he retrieved his personal belongings from Heatherly and noticed she was driving the Nissan vehicle which she had claimed she no longer owned. Defendant also discovered that the keys Heatherly represented he had stolen from her apartment were in fact his keys.

On July 29, 1999, Defendant called Heatherly and left obscene messages on her answering machine in which he "swore, made threatening remarks[,] and mentioned the new evidence." Defendant relayed the new information to his attorney. Defense counsel then informed Defendant that the prosecution had obtained a tape recording of the July 29, 1999 phone messages.

### III.

### A.

On August 12, 1999, Defendant filed a motion to withdraw his plea of no contest pursuant to HRPP Rule 32(d) and to reset the case for trial. HRPP Rule 32(d) provides:

**Withdrawal of a Plea of Guilty.** A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his [or her] plea.

The declaration of counsel attached to the motion referred to the purported new information Defendant had acquired after his release:

b. Since [May 12, 1999], Mr. Fogel has learned from credible citizens in the community that Ms. Susan Heatherly lied in court about a number of things.

c. Contrary to her sworn testimony, Ms. Heatherly did not sell the Datsun/Nissan vehicle involved in the incident.

d. Mr. Fogel is now in possession of his old set of duplicate keys which he believes match the keys Ms. Heatherly said belonged to her.

In a supporting memorandum of law, Defendant maintained that he "learned of additional facts that direct[ly] affect[ed] the credibility of [Heatherly,] ... [had] made a mistake in entering the plea[,] and would like to have the case go to trial with the additional evidence he [had] learned of after the first trial was halted." The prosecution filed an opposition memorandum on August 17, 1999, maintaining that "Defendant's version regarding" the incident did "not legally exculpate Defendant for [the offense of b]urglary in the [f]irst [d]egree" and claiming "severe[ ] prejudice[ ]" if the motion was granted.

The withdrawal motion was heard on August 19, 1999. Defendant testified on direct examination that he "would have wanted to go through with the trial" had he been given the opportunity to do so at the time he entered his plea. The tape recording of Defendant's messages to Heatherly was played for the court. Defendant's counsel later argued at the hearing that Defendant entered his plea "under what he would consider was

duress for being in custody for four months, suffering from post-traumatic stress disorder from his Vietnam veteran service."

The court stated it would rule on Defendant's motion under standards relating to pre-sentence plea withdrawal motions as set forth in *State v. Gomes*, 79 Hawai'i 32, 897 P.2d 959 (1995). The court first found that Defendant had entered his change of plea "knowingly, voluntarily, and intelligently." Secondly, the court denied the withdrawal motion, finding that the first *Gomes* factor, *i.e.*, that the defendant "never expressly admitted guilt," was present, but that the other three *Gomes* factors had not been satisfied.[4] *Id.* at 39, 897 P.2d at 966.

### B.

Immediately after the hearing on the motion to withdraw, the court began the sentencing hearing. The prosecution opposed deferral of Defendant's no contest plea. In response, defense counsel referred to the court's discussion of a DANC plea on the first day of trial, indicating that Defendant's plea had been made in reliance on the court's "representation":

> Your Honor, I'll just refresh the Court's memory about what happened in this particular case. After [Heatherly] testified, unless I'm mistaken about the impression, *we went back in chambers and this Court addressed the prosecution, said can it be knocked down to a misdemeanor because* after—frankly, I felt—I don't know if that's what the whole feeling in the conference was—their evidence wasn't very strong and this case wasn't amounting to very much.
>
> When [the prosecutor] indicated that she could not do that, she would need to get approval for that, *then we basically had a discussion about whether [Defendant] would accept a deferred acceptance.* Was

he eligible? Prosecutor said yes. Would he accept a deferred acceptance of a three-year period for this case?

> *This is what I presented to [Defendant] prior to his change of plea. So that was the representation from the Court. So I would just put on the record that he did enter his plea in reliance upon that representation* that I made to him.

(Emphases added.) The court denied making any such representation and denied the motion for a DANC plea, noting that it was "troubled" by information from the presentence report and Defendant's tape recorded message:

> I am very troubled, however, of the information that I have been informed of, especially the—the addendum that I received from the probation office as well as the reports that's [sic] contained in the presentence report of how the [D]efendant has not been able to control his anger and his desire to retaliate on situations where he does not get things his way.
>
> I am also very troubled about the nature of the conversation that was recorded in the taped telephone conversation. And altogether doesn't have any criminal record, which would make him eligible for a deferred acceptance—Mr Fogel, please stand.
>
> I was seriously thinking of putting you in prison for the maximum term of ten years even though the State didn't request it. There's a danger element here that I need to deal with because if anything happens at some later point, it's something that I could prevent at this time.

The court adjudged Defendant guilty as charged, placed him on probation for five years, and imposed, as one of the terms and conditions, a 180–day term of imprisonment. On appeal, Defendant contends this was "in direct contradiction to the representations

---

4. The four factors set forth in *Gomes* to be applied to motions to withdraw under HRPP Rule 32(d) are as follows:

(1) the defendant has never expressly admitted guilt; (2) the defendant advances a claim of new information or changed circumstances with factual support that, if believed by a reasonable juror, would exculpate the defendant; (3) there has been no undue delay in moving to withdraw the plea; and (4) the prosecution has not otherwise met its burden of establishing that it relied on the plea to its substantial prejudice.

*79 Hawai'i at 39, 897 P.2d at 966.*

the trial court made at the change of plea hearing."

### IV.

On September 1, 1999, the court entered written findings of fact, conclusions of law and an order setting forth its ruling on Defendant's motion to withdraw his plea.

Defendant filed a motion for reconsideration of sentence on September 17, 1999, pursuant to HRPP Rule 35.[5] A supporting declaration of counsel references a letter written by Defendant, in which Defendant requested that he be "granted the [DANC p]lea, with jail equal to the time he ha[d] already served[.]"

On October 1, 1999, the court heard Defendant's motion to reconsider the sentence. Defendant testified that he had changed his plea because he was offered a DANC plea, that he expected a three-year term of "probation," and that the felony charge would be "wiped off [his] record":

> Q [DEFENSE COUNSEL] ... You remember when we were in this courtroom or another courtroom actually quite sometime ago in the middle of trial you ended up changing your plea from a plea of not guilty to no contest? Why did you change your plea?
>
> A [DEFENDANT] Uh, because I was offered a DAG[6] and I would get out of jail that day.
>
> Q Okay. What type of sentence did you expect when you changed your plea?
>
> A Three years probation.
>
> Q Okay. And in regard to a DAG, what do you mean by that?
>
> A Um, that the felony would be wiped off of my record.
>
> Q Okay. Where did you get that understanding from before you changed your plea?
>
> A Uh, from the court and the judge.

> Q Okay. Did you rely upon that when you made your decision to change your plea?
>
> A Yes, I did. Yes.

Defense counsel asked that the court reconsider its denial of Defendant's Rule 32(d) motion based on Defendant's reliance on the court's offer to grant a DANC plea:

> Your Honor, just, uh, we're asking this motion be granted. We would also orally move for the court *to reconsider the motion for the denial on the motion to withdraw the plea* and just basically because I just received the transcript. But *it does appear that [Defendant] relied at least to some degree from the representation of the court [in] making his change of plea.*

(Emphases added.)

The court indicated it had not "agreed to give a DAG [sic]":

> I think it shows that [Defendant] may have relied more on representations of counsel as to what the court meant by "inclination." I didn't say that I would agree to give him a DAG [sic]. It was an inclination. And it was with the understanding that he was—he would be clean at the time of sentencing....
>
> . . . .
>
> I'm a little concerned about the way that this motion was filed and the vehicle that's being used to present further evidence that the defense may be trying to support and buttress an appeal, an appellate issue of getting some evidence in when it should have been presented at the time the motion or sentencing was filed or the motion to withdraw the plea, you know....
>
> . . . .
>
> You know, I don't hear anything new. Even reviewing the transcript doesn't refresh my recollection of anything that happened at sentencing. I was very clear at the time of sentencing, and my memory's very clear that it was only an inclination. And I say that in other cases too that it's an inclination on my part. But I'm expect-

---

**5.** HRPP Rule 35 regards correction or reduction of an illegal sentence. Defendant's motion, however, requested the court to in effect reconsider its denial of his DANC plea.

**6.** Although the deferral at issue is for a no contest plea, counsel and the court mistakenly refer to it as a "DAG" or deferred acceptance of guilty plea.

ing to see a clean bill of health at the time of sentencing. And by him—by—[Defendant], by taking other actions that were adverse to your situation before sentencing, it disturbed me.

The court denied the motion for reconsideration.

## V.

On appeal Defendant argues that: (1) the court erred in denying the motion to withdraw the plea because the test in *Gomes* was satisfied; (2) the court erred in denying the motion to reconsider the sentence because Defendant's plea was not intelligently or voluntarily entered; and (3) assuming Defendant is not entitled to withdraw his plea, he is, instead, entitled to receive specific performance of the court's purported representation or promise to enter a DANC order by order of another judge. The prosecution maintains that the court did not abuse its discretion in denying a plea withdrawal, but does agree·that Defendant should be resentenced by another judge and given a deferral of his no contest plea.

## VI.

"A motion to withdraw a plea of ... *nolo contendere* may be made ... before sentence is imposed[,]" HRPP Rule 32(d), and Defendant submitted such a motion. We find it unnecessary, however, to discuss whether the court correctly denied Defendant's presentence withdrawal motion.[7] We believe, from an objective standpoint, that the record establishes that the court's stated "inten[tion] to allow 'Defendant' to have a deferred acceptance of [a] no contest plea" induced Defendant's change of plea to the charged offense. Consequently, we conclude Defendant's post-sentence withdrawal request should have been granted under the "manifest injustice" provision of HRPP Rule 32(d).

## VII.

The evidence presented on Defendant's motion for withdrawal of his plea before sentence rested on claimed new evidence. However, at the motion for reconsideration of sentence, Defendant did orally move the court to reconsider its denial of his withdrawal motion on the ground that Defendant's plea had rested on the court's offer to grant Defendant's DANC plea. Defendant submitted evidence relevant to this issue at the hearing, rather than evidence pertaining to imposition of an illegal sentence as described in HRPP Rule 35.

■ The court's observation that evidence of Defendant's plea reliance should have been submitted at the motion to withdraw plea or at the sentencing hearing was incorrect. In response to the prosecution's opposition to a DANC plea order, Defendant had in fact argued at the sentencing hearing that he had relied on the court's offer to grant a deferral. Additionally, because the court's rejection of Defendant's deferral motion was not evident until after he was sentenced, reliance on the court's representation became relevant under HRPP Rule 32(d) only *after* he was sentenced. Thus, while the defense's characterization of the issue as one of a *reconsideration* of the withdrawal motion was not strictly correct, the submission of evidence underlying Defendant's plea was germane ·to the HRPP Rule 32(d) basis for seeking a post-sentence withdrawal of plea.

Moreover, the court did not preclude receipt of such evidence. Rather, it ruled, with reference to Defendant's HRPP Rule 32 oral reconsideration motion, that it had expressed "only an inclination" to grant the deferral premised on "a clean bill of health at the time of sentencing." The prosecution did not object to Defendant's testimony. Indeed, on appeal, it agrees "[t]he record shows that the trial court did in fact promise that it would 'allow' Defendant to have the deferred acceptance of no contest [plea]."

■ Under these circumstances, we treat Defendant's oral reconsideration motion as one for withdrawal premised on the "manifest injustice" standard in HRPP Rule 32(d). *See State v. Jim,* 58 Haw. 574, 576, 574 P.2d 521, 522 (1978) (stating that after sentence is

---

7.  Accordingly, we need not address the prosecution's claims under *Gomes* that withdrawal

would prejudice it and that there was an unreasonable delay in filing the withdrawal motion.

imposed, "the 'manifest injustice' standard [under Rule 32(d) ] is to be applied") (citation omitted). "What the manifest injustice rule [under HRPP Rule 32(d) ] seeks to avoid is an opportunity for the defendant to test the severity of sentence before finally committing himself [or herself] to a guilty plea." *Id.* at 576, 574 P.2d at 523 (internal quotation marks and citations omitted). But Defendant's withdrawal motion is not a consequence of disappointment born of hindsight.

## VIII.

■ The denial of a post-sentence motion for withdrawal of plea is reviewed for abuse of discretion. *See State v. Adams,* 76 Hawai'i 408, 411, 879 P.2d 513, 516 (1994). "An abuse of discretion occurs if the trial court has 'clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'" *Gomes,* 79 Hawai'i at 36, 897 P.2d at 963 (quoting *Adams,* 76 Hawai'i at 411, 879 P.2d at 516 (citations omitted)). *See also State v. Sacoco,* 45 Haw. 288, 292, 367 P.2d 11, 13 (1961). In *Adams,* this court concluded that the prosecution had violated a plea agreement and the trial court's post-sentence failure to set aside Adams's guilty plea pursuant to HRPP Rule 32(d) was an abuse of discretion. *See* 76 Hawai'i at 415, 879 P.2d at 520. It was said that case law from other jurisdictions, and as it was "expressly set forth in HRPP 11(e)(2)," [8] indicated that a defendant be permitted to withdraw a plea of guilty or no-contest under such a circumstance. *Id.* at 414, 879 P.2d at 519.

■ Correlatively, in *State v. Gumienny,* 58 Haw. 304, 568 P.2d 1194 (1977), this court indicated that "a promise or agreement of the trial judge [which leads to a plea] must be given the same effect," *id.* at 308, 568 P.2d at 1198 (citation omitted), as "a promise or agreement of the prosecutor, . . . said to be part of the inducement or consideration" for a defendant's plea. *Id.* at 308, 568 P.2d at 1197–98 (internal quotation marks and cita-

tion omitted). Applying these axioms from *Adams* and *Gumienny,* we hold that to correct manifest injustice, a defendant must be permitted, pursuant to HRPP Rule 32(d), to withdraw a plea entered in reliance on a court's representation or promise, which is statutorily incapable of being effectuated.

■ It appears from the court's comments at the sentencing hearing that an addendum from the probation office, the presentence report, and the tape recorded comments of Defendant to Heatherly, had affected its earlier expressed inclination to grant a deferred plea. Under such a circumstance the court could have permitted Defendant's plea to be withdrawn. The court's expressed intention to "allow" a deferral of Defendant's plea induced him to enter it. *See Gumienny,* 58 Haw. at 310, 568 P.2d at 1199 ("A plea . . . is not other than intelligent and voluntary merely because the defendant has an expectation, however well-founded, that the judge will concur in a plea bargain, *if that expectation was not induced by any representation or promise made to the defendant.*") (emphasis added). Because that representation was not fulfilled, "there is 'manifest injustice' as a matter of law," *Adams,* 76 Hawai'i at 414, 879 P.2d at 519 (internal quotation marks and citation omitted), and Defendant must be permitted to withdraw his plea. *See id.* ("It is well settled that the terms of a plea agreement, which serve as the inducement for entering a plea, must be fulfilled.") (citing *State v. Costa,* 64 Haw. 564, 566, 644 P.2d 1329, 1331 (1982); *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). Consequently, the court's refusal to permit withdrawal was an abuse of discretion. *See id.* at 415, 879 P.2d at 520.

## IX.

■ Having decided that the court erred in refusing to allow Defendant to withdraw his plea under the first of the "principles" embodied in Rule 32(d), *Jim,* 58 Haw. at 576–77, 574 P.2d at 522, we are faced with the prosecution's contention that Defendant is

8. HRPP Rule 11(e)(2), entitled "Notice of Plea Agreement," states that "[a]ny plea agreement shall be disclosed by the parties to the court at the time the defendant tenders his [or her] plea.

Failure by the prosecutor to comply with such agreement shall be grounds for withdrawal of the plea."

not entitled to withdrawal of his plea, but only to its deferral, *i.e.*, the benefit of his DANC plea.

■ When the prosecution breaches a plea bargain, discretion is given the trial court on remand to determine, under the circumstances, which of the alternatives—withdrawal of the plea or enforcement of the bargain—is appropriate. *See Adams,* 76 Hawai'i at 414, 879 P.2d at 519. Factors "to be considered" by the trial court in arriving at this decision are: (1) the alternative chosen by the defendant to which "considerable weight" should be given; (2) "the timeliness of the motion"; (3) "the extent of the breach"; (4) "the prejudice to the parties"; and (5) "[that] alternative [which] will best serve the effective administration of justice." *Id.* at 414–15, 879 P.2d at 519–20. Because we do not believe Defendant is entitled to a choice of remedies, we do not reach the issue of whether the *Adams* factors should be qualified in some way when a trial court breaches its promise as contrasted with the prosecution's breach of a plea bargain.

Defendant maintains (apparently as an alternative argument) that the "court did not have the authority to grant a DANC to [De-

fendant]." [9] HRS § 853–1 grants discretion to the court to defer acceptance of a defendant's plea upon three preconditions,[10] one of which is that the defendant enter the plea "prior to commencement of trial." Pursuant to the plain language of HRS § 853–1(a)(1), *see supra* note 10, a defendant who fails to enter his or her plea prior to trial is not eligible for consideration under HRS chapter 853. Hence, Defendant was not eligible for deferral of his plea. Because the remedy remaining is that of a withdrawal of his plea, we instruct on remand that the court enter an order permitting Defendant to withdraw his plea.

## X.

For the foregoing reasons, we vacate the August 19, 1999 judgment and sentence and remand the case to the court for disposition in accordance with this opinion.

9. The prosecution argues that this court, "in *State v. Keahi*, 66 Haw. 364, 662 P.2d 212 (1983), ·held that a trial court could grant or deny a motion for acceptance of a nolo contendere plea even though the plea was entered after trial had commenced." In that case, *State v. Brown*, 1 Haw.App. 602, 623 P.2d 892 (1981), was cited for the proposition that "the trial court had inherent power to grant or deny acceptance of a [DANC] plea." *Keahi*, 66 Haw. at 365, 662 P.2d at 213. Apparently at the time *Brown* was decided and Keahi entered his plea, HRS chapter 853 did not encompass no contest pleas and, accordingly, *Keahi* and *Brown* are factually distinguishable from this case.

10. The three preconditions for consideration of a deferred plea motion are:

(1) When a defendant voluntarily pleads guilty or nolo contendere, prior to commencement of trial, to a felony, misdemeanor, or petty misdemeanor.

(2) It appears to the court that the defendant is not likely again to engage in a criminal course of conduct; and

(3) The ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law.

HRS § 853–1(a).