**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000391
31-MAY-2023
08:04 AM
Dkt. 52 SO**

NO. CAAP-21-0000391

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


STATE OF HAWAI‘I, Plaintiff-Appellee, v.
CAROLINE KOLEY STONER, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-19-0000068)


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Wadsworth and Nakasone, JJ.)

Defendant-Appellant Caroline Koley Stoner (**Koley Stoner**) appeals from the Judgment; Conviction and Probation Sentence; Terms and Conditions of Probation; Notice of Entry (**Judgment**), entered on May 14, 2021, and the Amended Judgment; Conviction and Probation Sentence; Terms and Conditions of Probation; Notice of Entry (**Amended Judgment**), entered on May 28, 2021, in the Circuit Court of the Second Circuit (**Circuit Court**).[1/]  For the reasons explained below, we vacate Koley Stoner's sentence and remand for resentencing.

On January 28, 2019, Koley Stoner was charged by indictment with two counts of Forgery in the Second Degree (Counts One and Three), in violation of HRS § 708-852; three counts of Prohibited Acts C (Counts Two, Four, and Five), in violation of HRS § 329-42; and one count of Theft in the Fourth Degree (Count Six), in violation of HRS § 708-833.  Koley Stoner

---

[1/]     The Honorable Rhonda I.L. Loo presided.

pleaded not guilty and demanded a jury trial.

At a January 22, 2021 change-of-plea hearing, Koley Stoner changed her plea to no contest as to Counts One and Two pursuant to a plea agreement and moved to defer acceptance of her no contest pleas (**DANCP motion**).  The State agreed to dismiss the remaining charges with prejudice.  The plea agreement provided, *inter alia*:  "If applicable and if Defendant qualifies, the State will remain silent to Defendant moving for sentencing pursuant to [HRS §§] 706-622.5 (Sentencing for Drug Offenders), 712.1255 (Conditional Discharge), 706-622.9 (First Time Property Offender), or 853-1 (DAG/DANC)[.]"  Sentencing was set for May 14, 2021.

At the sentencing hearing, the deputy prosecuting attorney (**DPA**) made the following statement regarding the plea agreement:

> [Y]our Honor, the State's just asking that the Court, um, follow the plea agreement in this matter.  And I do note that with the presentence diagnosis report, ah, they did note that she had two days of credit.
>
> We're just asking to follow . . . the plea agreement.

Defense counsel then made the following argument in favor of the plea agreement and the DANCP motion:

> [Y]our Honor, . . . [Koley Stoner] has numerous health conditions, including some that, ah, do affect her judgment. Um, she is on -- now on disability as a result of those health conditions, your Honor.
>
> Um, I think that it's extreme -- like I said, she's given up her ability to write prescriptions at all voluntarily.  She's more focused on trying to maintain her health.
>
> Um, I think it's extremely unlikely she will reoffend. I think that given what we see in this court even though, um, it is criminal, I do not think that this is a type of crime that requires her to maintain a felony conviction on her record.
>
> I'm confident that she will be one of the easiest clients probation has.
>
> And so, your Honor, I would ask you to follow the agreement.  Put her on probation and grant the deferral. Thank you.

The court asked Koley Stoner if she wanted "to say . . . or explain anything," and Koley Stoner responded in part:

2

> I guess what I really want to say is, um, I definitely showed a lack of judgment at the time this occurred.
>
> Um, I'm completely humiliated and embarrassed by my actions. Um, I regret I put the Court through this. Um, it didn't have to happen.
>
> . . . .
>
> So I have -- um, I just -- I just want to apologize and, you know, hope that you can understand I -- this is not -- I'm not a criminal. I'm just a nurse and I -- and I had a judgment error.
>
> I do have some issues, um, I'm being treated for -- for that. So I -- I -- that's really all I want to say. I apologize.

The court then asked the DPA, defense counsel, and Koley Stoner if they had anything else to add. After they declined, the court engaged in the following discussion with Koley Stoner:

> THE COURT: I'm trying to figure out whether you were popping these pills or you were pushing these pills. Because the prescription was for your husband.
>
> And yet in his glowing letter of you, he writes a very glowing letter. And I appreciate, you know, the time and effort he put in that letter, but nowhere does he say in that letter that the prescription was for him.
>
> [KOLEY STONER]: Hmm-mm.
>
> THE COURT: So, the prescription was in his name that you tried to go ahead and get pills. So were the pills for you? Were the pills for someone else? Or were you going to sell or distribute these pills to some other needy past client or patient?
>
> [KOLEY STONER]: No.
>
> THE COURT: So who were they for?
>
> [KOLEY STONER]: No. They were for myself and for my husband. I -- I –
>
> THE COURT: They were for yourself, which you did not have a prescription for. They were for your husband, who also did not have a prescription from Dr. Bird; right?
>
> [KOLEY STONER]: Correct. I can't --
>
> THE COURT: No, I -- I -- I'm trying to get this. You know, you're a educated. Substantial knowledge educated -- education. You're mature. You have a good employment history. Stable family environment. Lack of a criminal history.
>
> And yet you have this massive error in judgment. I'm trying to figure out how this would even occur . . . .

The court summarized the findings in the pre-sentence diagnosis and report, as well as details of a conversation between the court and a pharmacy manager regarding the prescription at issue. Defense counsel and the court then engaged in the following dialogue:

> [THE COURT:] And first time I'm hearing that the pills were for you. Because all along you were denying that you did anything wrong or that there's any problems. Now I hear today that the pills were for you. All of these pills?
>
> [DEFENSE COUNSEL]: Your Honor, she said they were for both her and her husband.
>
> THE COURT: Which neither of you had a prescription for; is that correct?
>
> [DEFENSE COUNSEL]: Not a current prescription.
>
> THE COURT: Okay. So you're a pill popper then? Is that a fair characterization?
>
> [DEFENSE COUNSEL]: Your Honor, there was a prescription that was inappropriate. This is something --
>
> THE COURT: It was false. It was fake.
>
> [DEFENSE COUNSEL]: Yes. And I think that in these pain clinics which this is, I think we see it all the time with people in here where they give these out very easily.
>
> And I think it's common among providers to take short cuts. It's inappropriate though and it's illegal.
>
> THE COURT: But it sounds like in this case that Ms., um, Koley Stoner, who used to work for Dr. Bird, got ahold of one of these stamps . . . .
>
> . . . .
>
> So your client, I can only assume, since she used to work for Dr. Bird got ahold of some of these stamps or --
>
> [DEFENSE COUNSEL]: Or was given some prescriptions that were filled out after they were signed.
>
> THE COURT: After they were signed.

The DPA then interjected:

> Your Honor, I think -- I think, if I may, your Honor asked if Ms. Koley Stoner was a pill popper.
>
> And I -- I think at the root of that question and the point of asking Ms. Koley Stoner why -- who -- who was using these pills and who these pills were for is for, perhaps for Ms. Koley Stoner to recognize that she might have an issue with using these types of pills or somebody might.
>
> And that's why such extreme actions were taken. And I think that personally as a drug prosecutor um, when I work

4

with folks or I see situations of addiction or drug abuse problems, um, a lot of times they happen with these pills first and then it goes downhill from there.

So I think the question that you're asking gets to the point of what the root problem here is. And something that Ms. Koley Stoner might need to confront, um, and really come to terms first, if you want to get to the root of the problem here, of -- of all this behavior that she -- she resorted to.

The Circuit Court denied Koley Stoner's DANCP motion, stating in part:

The Court does find, first of all, as far as the deferral or conditional discharge or first time offender is concerned that Ms. Koley Stoner is not deserving of such -- of such a gift here.

And she's demonstrated in more than one way that though she may not be what she says is a criminal, and she just has an error of judgment, the Court still finds that she did very little to explain her actual criminal conduct or her actual conduct in this particular case.

And the Court finds that the ends of justice and the welfare of society do require that she presently, um, suffer the penalty imposed by law.

And it appears to the Court defendant is likely again to engage in a criminal course of conduct.

As reflected in the Judgment, the Circuit Court sentenced Koley Stoner to, *inter alia*, four years of probation, 30 days of incarceration with credit for time served, various fines and fees, and 200 hours of community service. On May 28, 2021, the Amended Judgment was filed, which was identical to the Judgment, except that it reduced Koley Stoner's jail term from 30 days to 16 days. This appeal followed.

On appeal, Koley Stoner asserts a single point of error: "The government breached the parties' plea agreement by failing 'to stand silent regarding the deferral' and/or by joining in on the Court's attack of [Koley] Stoner."[2/] Whether

_____

[2/] Although Koley Stoner did not raise this issue in the Circuit Court (*e.g.*, at the sentencing hearing), she seeks plain error review on appeal. Because the government's breach of a plea agreement "'implicates' 'due process' and the 'interests of justice,'" we may review the alleged error under the plain error doctrine. See State v. Miller, 122 Hawaiʻi 92, 101, 223 P.3d 157, 166 (2010) (quoting State v. Adams, 76 Hawaiʻi 408, 414, 879 P.2d 513, 519 (1994) and Santobello v. New York, 404 U.S. 257, 262 (1971)) ("breaches of plea agreements provide appropriate bases for appellate review under the plain error standard" (quoting Adams, 76 Hawaiʻi at 414, 879 P.2d at 519)); see also Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 52(b) ("Plain
(continued...)

the State has breached the terms of a plea agreement is reviewed de novo under the right/wrong standard of review. See Miller, 122 Hawaiʻi at 101, 223 P.3d at 166.

"A plea agreement is essentially a contract" and is generally measured by contract principles. See Miller, 122 Hawaiʻi at 104, 223 P.3d at 169 (quoting Adams, 76 Hawaiʻi at 412, 879 P.2d at 517). Here, Koley Stoner's plea agreement required that the State "remain silent to [Koley Stoner] moving for sentencing pursuant to [HRS §] . . . 853-1 (DAG/DANC)[.]"[3/] Based on the plain language of the State's promise, it is reasonable to conclude that the State was required to stand silent as to any issue pertinent to Koley Stoner's DANCP motion, such as an issue relevant to the factors to be considered by the court in deciding the motion. See Adams, 76 Hawaiʻi at 413, 879 P.2d at 518; HRS § 853-1 (2014).

But the State did not stand silent in that regard; after the Circuit Court essentially characterized Koley Stoner as a "pill popper," the DPA interjected and volunteered that the point of the court asking Koley Stoner who was using these pills was "perhaps for Ms. Koley Stoner to recognize that she might have an issue with using these types of pills . . . . And that's why such extreme actions were taken." (Emphasis added; format altered.) Further, after suggesting that Koley Stoner might have a drug abuse problem, the DPA cited her experience "as a drug prosecutor" to opine that "a lot of times they happen with these pills first and then it goes downhill from there." (Emphasis added.) The DPA's comments were thus relevant to whether Koley Stoner "is not likely again to engage in a criminal course of conduct" and whether "[t]he ends of justice and the welfare of society do not require that [Koley Stoner] shall presently suffer the penalty imposed by law." HRS § 853-1(a). In particular, the

---

[2/] (...continued)
errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

[3/] The terminology of the plea agreement is imprecise, in that a DANC is not a sentence. State v. Satoafaiga, 150 Hawaiʻi 406, 418, n.17, 504 P.3d 324, 336, n.17 (2022); State v. Oshiro, 69 Haw. 438, 442, 746 P.2d 568, 570 (1987).

DPA's comments were relevant to the nature and circumstances of Koley Stoner's offense and the history and characteristics of Koley Stoner. See Satoafaiga, 150 Hawaiʻi at 421, 504 P.3d at 339 ("In making these [HRS § 853-1(a)] determinations, the court may consider sentencing factors discussed in the PSI report, including the 'nature and circumstances of the offense and the history and characteristics of the defendant.' HRS § 706-606.") Accordingly, the State breached its agreement to stand silent as to any issue pertinent to Koley Stoner's DANCP motion.

In these circumstances, we cannot say that the error was harmless beyond a reasonable doubt. In any event, in Miller, the supreme court similarly concluded that the State breached its agreement to take no position on the defendant's motion for DANCP. 122 Hawaiʻi at 105, 223 P.3d at 170. The supreme court noted that "based on the breach alone, the case must be remanded in 'the interests of justice,' regardless of prejudice, because, in the case of a plea agreement, the prosecutor's 'promise must be fulfilled.'" Id. at 101, 223 P.3d at 166 (emphasis omitted) (citing Santobello, 404 U.S. at 262); see Adams, 76 Hawaiʻi at 414, 879 P.2d at 519 (same); State v. Meador, No. CAAP-19-0000460, 2021 WL 2287477, *6 (Haw. App. June 4, 2021) (same).

Where the State breaches a plea agreement:

> either resentencing or withdrawal of a plea may be the appropriate remedy depending on the defendant's particular circumstances. In considering which remedy is appropriate, the trial court should give considerable weight to the choice of the defendant. "[A] court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State." Santobello, 404 U.S. at 267, . . . (Douglas, J., concurring).

Adams, 76 Hawaiʻi at 414, 879 P.2d at 519 (footnote omitted).

Here, Koley Stoner requests that her case be remanded for resentencing before another circuit court judge. A remand for resentencing is an appropriate disposition under the circumstances of this case, where the circuit court judge who presided over Koley Stoner's original sentencing has retired, rendering the request for another judge moot.

For these reasons, we vacate Koley Stoner's sentence and remand for resentencing.

DATED: Honolulu, Hawaiʻi, May 31, 2023.


On the briefs:

Matthew Nardi
for Defendant-Appellant.

Richard B. Rost,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Karen T. Nakasone
Associate Judge