118 P.3d 662

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Walter Wayne DE GUAIR, Defendant–Appellant.**

**Walter Wayne de Guair, Petitioner–Appellant,**

v.

**State of Hawai'i, Respondent–Appellee.**

Nos. 25390, 25625, 26560.

Supreme Court of Hawai'i.

Aug. 18, 2005.

As Corrected Aug. 22, 2005.

Charlene Y. Iboshi, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee/respondent/appellee State of Hawai'i.

Michael G.M. Ostendorp and Shawn A. Luiz, on the briefs, Honolulu, for the defendant-appellant/petitioner-appellant Walter Wayne De Guair.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; and ACOBA, J., Concurring Separately and Dissenting.

Opinion of the Court by LEVINSON, J.

The petitioner-appellant/defendant-appellant Walter Wayne De Guair appeals from: (1) the orders of the circuit court of the third circuit, the Honorable Greg Nakamura presiding, entered respectively on January 25, 2000 and January 23, 2003, disposing of De Guair's May 20, 1999 Hawai'i Rules of Penal Procedure (HRPP) Rule 35 motion (1999)[1] [hereinafter, "Rule 35 motion"] for reduction of sentence, granting the motion by changing the mandatory minimum terms of imprisonment from consecutive to concurrent terms and denying the motion to vacate De Guair's sentence for attempted manslaughter on his substantive claim that there is no such offense on the basis that "there is a valid offense of mitigated attempted manslaughter" and that De Guair was properly convicted of that offense; and (2) the April 26, 2004 order of the circuit court of the third circuit, the Honorable Terence T. Yoshioka presiding, denying De Guair's October 21, 1998 HRPP Rule 40 petition (1998)[2] [hereinafter,

---

1. In 1999, HRPP Rule 35 provided in relevant part:

   **Correction or reduction of sentence.** The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.... The filing of a notice of appeal shall not deprive the court of jurisdiction to entertain a timely motion to reduce a sentence.

2. It appears that De Guair petitioned for post-conviction relief pursuant to HRPP Rule 40(a)(1)(i), (iii), and (iv), which provides in relevant part:

   (1) FROM JUDGMENT. At any time but not prior to final judgment, any person may seek relief under the procedure set forth in this rule from the judgment of conviction, on the following grounds:

"Rule 40 petition"] for post-conviction relief. On appeal, De Guair argues: (1) that the circuit court erred in denying his Rule 35 motion, inasmuch as he established "an abuse of discretion by the trial court in allowing his plea to stand to a crime [that] did not exist at the time of [his] change of plea"; and (2) that the circuit court erred in summarily denying his Rule 40 petition, inasmuch as (a) the sentencing court erred in allowing him to plead to an offense that did not exist, and (b) he was denied effective assistance of counsel because defense counsel allowed him to enter a plea to a crime that did not exist.

For the reasons discussed *infra*, we hold that the circuit court did not err in denying both De Guair's Rule 40 petition and Rule 35 motion. Accordingly, we affirm the January 23, 2003 and the April 26, 2004 orders of the circuit court.

## I. BACKGROUND

### A. Indictment

The present matter arises out of an incident that occurred on December 23, 1992, in which De Guair fired shots into a group of friends, killing Kenneth Mariani and severely wounding William Mariani.

On December 24, 1992, De Guair was charged by complaint in Cr. No. 92–509 with the following offenses: (1) murder in the second degree (Count I), in violation of Hawai'i Revised Statutes (HRS) § 707–701.5 (1986); (2) attempted murder in the second degree (Count II), in violation of HRS §§ 705–500 (1986) and 707–701.5; (3) attempted murder in the first degree (Count III), in violation of HRS §§ 705–500 and 707–701 (1986); (4) reckless endangering in the first degree (Counts IV, V, and VI), in violation of HRS § 707–713 (Supp.1992);[3] and (5) possession of a firearm in the commission of a felony (Count VII), in violation of HRS § 134–6(a) (Supp.1988 & Supp.1990).

### B. No Contest Plea

On April 29, 1996, the circuit court conducted a change of plea hearing. De Guair entered no contest pleas to the following:[4] (1) manslaughter, in violation of HRS § 707–702 (1993);[5] (2) attempted manslaughter, in

---

(i) that the judgment was obtained or sentence imposed in violation of the Constitution of the United States or of the State of Hawaii;

. . . .

(iii) that the sentence is illegal;

. . . .

(v) any ground which is a basis for collateral attack on the judgment.

HRPP Rule 40(f) provides in relevant part that "the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner."

3. HRS § 707–713 provides:

(1) A person commits the offense of reckless endangering in the first degree if the person employs widely dangerous means in a manner which recklessly places another person in danger of death or serious bodily injury or intentionally fires a firearm in a manner which recklessly places another person in danger of death or serious bodily injury.

(2) Reckless endangering in the first degree is a class C felony.

4. The original written judgment, filed on July 5, 1996, erroneously recorded the charges set forth Counts I and II to which De Guair pled as (1) the "Lesser Included Offense of Manslaughter in the Second Degree," in violation of HRS § 707–701.5, and (2) the "Lesser Included Offense of Attempted Manslaughter in the Second Degree,"

in violation of HRS §§ 705–500(1)(b) and 707–701.5(1). On September 24, 2002, however, the circuit court entered a corrected judgment *nunc pro tunc* to July 5, 1996 that correctly reflected the offenses to which De Guair pled.

5. HRS § 707–702 provided in relevant part:

(1) A person commits the offense of manslaughter if:

(a) He recklessly causes the death of another person; or

(b) He intentionally causes another person to commit suicide.

(2) In a prosecution for murder in the first and second degrees it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

Effective June 17, 1996, the legislature amended HRS § 707–702, reclassifying manslaughter as a class A felony from a class B felony. This amendment does not affect De Guair's conviction of and sentencing for manslaughter and attempted manslaughter as class B felonies, inasmuch as the amendment was not retroactive. *See* 1996 Haw. Sess. L. Act 197, §§ 2 and 3 at 449. Effec-

violation of HRS §§ 705–500 (1993)[6] and 707–702, *see supra* note 5; (3) first-degree reckless endangering, in violation of HRS § 707–713, *see supra* note 3; and (4) ownership or possession of a firearm prohibited, in violation of HRS § 134–7(b) (1993 & Supp. 1995).[7]

The circuit court questioned De Guair regarding his no contest pleas, in relevant part, as follows:

[THE COURT]: Do you understand the terms of the plea agreement?

[DE GUAIR]: Yes.

Q. You have any questions about them?

A. No.

. . . .

Q. Did you sign on the line for defendant's signature?

A. Yes.

Q. Did you sign after going over all the terms of the document with your attorney?

A. Yes.

Q. Do you have any complaints about your lawyer?

A. No.

Q. Are you satisfied with what your lawyer has done for you in this case?

A. Yes.

Defense counsel provided the circuit court with a brief factual basis for the attempted manslaughter offense to which De Guair was entering his no contest plea:

Factual basis, Your Honor, that on or about December 23rd, 1992, in Puna, County and State of Hawaii, Mr. De Guair was involved in a physical confrontation with a Kenneth Mariani. That after that confrontation[,] Mr. De Guair got in his car to leave the residence of the Mariani[ ]s. That as he started to . . . leave, that he stopped, then, uh, he *intentionally* fired a .22 caliber firearm: The . . . one shot at Kenneth [Mariani] result[ed] in his death; one shot . . . hit . . . William Mariani, the brother of Kenneth Mariani, resulting in injuries.

(Emphasis added).

The circuit court found that "De Guair understands the consequences of his plea and that he has knowingly, voluntarily and intelligently entered into this particular plea and waived his right to trial." The circuit court then accepted and filed De Guair's no contest plea.

C. *Sentence*

On July 5, 1996, the circuit court conducted a sentencing hearing. During the hearing, defense counsel noted that "[b]ut for the plea agreement, we would have faced a murder in the first degree charge, so we entered the agreement, and we agreed to stipulate to the elements for this mandatory minimum to be imposed." The circuit court sentenced De Guair to the following: (1) as to Counts I and II, ten-year maximum indeterminate terms of imprisonment subject to mandatory mini-

---

tive May 19, 2003, the legislature amended HRS § 707–702(2), among other things, to make "EMED manslaughter" an affirmative mitigating defense. *See* 2003 Haw. Sess. L. Act 64, § 1 at 115–16.

6. HRS § 705–500 provides:
(1) A person is guilty of an attempt to commit a crime if the person:
(a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
(b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.
(2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.
(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

7. HRS § 134–7(b) provided:
No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

mum terms of five years; (2) as to Count IV, a five-year maximum indeterminate term of imprisonment; and (3) as to Count VIII, a ten-year maximum indeterminate term of imprisonment. The circuit court ordered the sentences relating to Counts I, II, and VIII to run consecutively to one another and the sentences relating to Count IV to run concurrently with that imposed as to Count VIII.

### D. *Rule 40 Petition*

On October 21, 1998, De Guair, *pro se*, filed a Rule 40 petition seeking relief from the judgment entered in Cr. No. 92–509 on the grounds that he had received ineffective assistance of counsel and that the offense of attempted "reckless" manslaughter, to which he had pled, did not exist. On July 29, 2003, defense counsel Michael Ostendorp filed a letter requesting a stay of proceedings pending the outcome of De Guair's appeal of the denial of his Rule 35 motion on the same matter.

On April 25, 2004, the circuit court entered its findings of facts (FOFs), conclusions of law (COLs), and order both denying De Guair's motion to stay proceedings and his Rule 40 petition for post-conviction relief. The following FOF and COLs are relevant:

#### FINDINGS OF FACT

. . . .

12. [De Guair's] Rule 40, HRPP, post-conviction petition, supporting documentation and pleadings, and the records and files herein, are insufficient to raise factual matters that would support the relief requested by [him]. Therefore, this court makes the following:

#### CONCLUSIONS OF LAW

1. Under Rule 40, HRPP, that materials and arguments in support of [De Guair's] [p]ost-conviction petition do not show that the facts, if proven, would entitle [De Guair] to the relief sought in the petition.

2. The claims in the petition are patently frivolous and not supported by the record or from the evidence submitted, under Rule 40, HRPP standards.

3. The same claims were raised in [De Guair's] Rule 35, HRPP motion to correct illegal sentence under Cr. No. 92–509 and ruled upon by Judge Nakamura previously. The Order Denying Defendant's Motion to Reduce Sentence and Amend Judgment [is] on [a]ppeal in the Hawaii Supreme Court under S.Ct No. 25390.

4. It is appropriate for this court to deny [De Guair's] Petition for Post-conviction relief without a hearing, and to deny [De Guair's] Motion to Stay the Rule 40 [p]roceedings pending the outcome of the appeal of the denial of his Rule 35 motion.

On May 4, 2004, De Guair filed a notice of appeal. The notice of appeal was erroneously captioned as Cr. No. 92–509 rather than SPP No. 98–003 and was consequently filed in the record of Cr. No. 92–509. On September 8, 2004, De Guair filed an *ex parte* motion in circuit court to correct the caption on the notice of appeal to include SPP No. 98–003. On the same day, the circuit court entered an order granting De Guair's motion to correct the caption on the notice of appeal.

### E. *Rule 35 Motion*

On May 20, 1999, De Guair filed a motion for reduction of sentence and to amend judgment to strike consecutive mandatory minimum terms of imprisonment, pursuant to HRPP Rule 35. In his Rule 35 motion, De Guair stated that this court had "determined that there is no attempted manslaughter[,] *State v. Holb[ro]n*, 80 Haw[ai'i] 27, 904 P.2d 912 (1995)[,] and that mandatory minimum terms of imprisonment must be served concurrently with one another, *State v. Cornelio*, 84 Haw[ai'i] 476, 935 P.2d 1021 (1997)[,]" and requested that the circuit court "reduce his previously imposed sentence . . . to specifically run all of the counts concurrent and strike the consecutive mandatory minimum."

On July 12, 1999, the circuit court conducted a brief hearing on De Guair's Rule 35 motion and partially granted it by amending the judgment to reflect that there was only one mandatory minimum term of imprisonment. On January 25, 2000, the circuit court filed an amended judgment *nunc pro tunc* to July 5, 1996, which recorded the mandatory minimum terms of imprisonment relating to

Counts I and II as running concurrently with one another.

On August 26, 2002, the circuit court conducted a hearing on the remaining unresolved assertion raised in De Guair's Rule 35 motion, to wit, that the offense of attempted manslaughter to which he had pled did not exist, thus requiring the circuit court to "set aside" the judgment of conviction as to that count. Defense counsel offered the following argument:

[DEFENSE COUNSEL (DC)]: [De Guair] did [plead no contest] to an attempted manslaughter [charge,] and essentially there's two types of manslaughter. The first being reckless, which the [*State v.*]*Holbron* [, 80 Hawai'i 27, 904 P.2d 912 (1995),] court decided was basically involuntary manslaughter, and you can't have attempted involuntary manslaughter because that's basically saying it's intended therefore voluntary, therefore voluntary/involuntary manslaughter, which doesn't work.

The second type is [extreme mental or emotional disturbance (EMED)] manslaughter, . . . and that does not apply to the facts in this case. We have a situation in which [De Guair] was not under any emotional distress. There's nothing in the record saying that he was. He was leaving the area. He wasn't under any kind of threat, perceived threat, whether that was a reasonably perceived threat or an unreasonably perceived threat.

And, also, you can't charge EMED manslaughter. It's a defense. It's not a chargeable offense that can be brought forth in the indictment[.]

. . . .

Therefore, [De Guair's no contest plea] to [EMED] manslaughter cannot stand. He couldn't be charged with it. He couldn't [plea] to it. There's nothing in the record to support it, and the judgment for that count should be set aside.

[Deputy Prosecuting Attorney (DPA)]: [W]e believe that the facts of this case as shown by the mental examination show that [De Guair] could have made a claim for . . . the EMED defense[.]

. . . .

[O]bviously, [De Guair] had the benefit of a bargain. There was a reduction of the charge from Murder in the First Degree to the charge of Manslaughter [for] the killing of one victim.

. . . .

[De Guair] got a deal, and the deal was from life imprisonment without possibility of parole to a count of manslaughter for the killing of one person and . . . attempted manslaughter. And the State's position was the EMED type of manslaughter.

. . . .

So he basically got a deal from life imprisonment without possibility of parole to the term that he received from the [c]ourt.

He's basically not happy with it now . . .—they should call it a motion for withdrawal of plea rather than trying to attack the underlying plea[.]

. . . .

So the State's position is [that] when the record is silent as to which type of manslaughter it was, one that would have been illegal and one that would have been legal, the [c]ourt must construe it in the light that's most favorable and likely and legal, which would have been attempted manslaughter with a mitigated extreme emotional disturbance defense[.]

The circuit court denied De Guair's Rule 35 motion, orally ruling as follows:

Okay. This was not a guilty plea. It was a no contest plea[,] right?

. . . .

[I]n regard to this part of the motion, uh, the [c]ourt will deny it. [De Guair] is apparently arguing that he should not have been convicted under Count 2 of the indictment of . . . the offense of [a]ttempted [m]anslaughter. [De Guair's] initial argument was that pursuant to *State* [*v.*] *Holbron*, there's no offense of attempted manslaughter as, uh, it's now conceded this is not precisely correct.

Although there may not be an offense of attempted manslaughter based upon reckless conduct, there is an offense . . . of attempted manslaughter based upon extreme mental or emotional disturbance.

Since there is a valid offense of attempted manslaughter to which [De Guair] pled no contest, [ ] there is a valid plea in the [c]ourt's mind, and there is no basis to reduce [his] sentence.

So, again, the motion is denied.

On January 27, 2003, the circuit court filed its FOF's, COLs, and order denying De Guair's motion to reduce sentence and amend judgment. The circuit court's sole COL stated that "[t]he Defendant was properly found guilty of Attempted Manslaughter." On October 3, 2002, De Guair filed a timely notice of appeal.[8]

## II. STANDARDS OF REVIEW

### A. Sentencing

▮ [A] sentencing judge generally has broad discretion in imposing a sentence. *State v. Gaylord*, 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995); *State v. Valera*, 74 Haw. 424, 435, 848 P.2d 376, 381 ... (1993). The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. *Gaylord*, 78 Hawai'i at 144, 890 P.2d at 1184; *State v. Kumukau*, 71 Haw. 218, 227–28, 787 P.2d 682, 687–88 (1990); *State v. Murray* [,] 63 Haw. 12, 25, 621 P.2d 334, 342–43 (1980); *State v. Fry*, 61 Haw. 226, 231, 602 P.2d 13, 16 (1979). *Keawe v. State*, 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995). "[F]actors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." *Fry*, 61 Haw. at 231, 602 P.2d at 17. And, " '[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Keawe*, 79 Hawai'i at 284, 901 P.2d at 484

(quoting *Gaylord*, 78 Hawai'i at 144, 890 P.2d at 1184 (quoting *Kumukau*, 71 Haw. at 227–28, 787 P.2d at 688)).

*State v. Rauch*, 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000) (brackets and ellipsis points in original).

### B. Questions Of Constitutional Law

▮ "We answer questions of constitutional law 'by exercising our own independent judgment based on the facts of the case,' " and, thus, questions of constitutional law are reviewed on appeal "under the 'right/wrong' standard." *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations omitted).

*State v. Aplaca*, 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001).

### C. Denial Of An HRPP Rule 40 Petition Without An Evidentiary Hearing

▮ With regard to the denial of a HRPP Rule 40 petition without an evidentiary hearing, HRPP Rule 40(f) provides in relevant part:

If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner. The court may also deny a hearing on a specific question of fact when a full and fair evidentiary hearing upon that question was held during the course of the proceedings which led to the judgment or custody which is the subject of the petition or at any later proceeding.

In addition, we have previously stated:

As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition

8. De Guair's October 3, 2002 notice of appeal was considered filed upon the circuit court's entry of a written order on January 27, 2003, which followed this court's temporary remand for the entry of such order. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b)(4) (2003) ("A notice of appeal filed after the announcement

of a decision, sentence or order but before entry of the judgment or order shall be deemed to have been filed on the date such judgment or order is entered.") Therefore, De Guair's notice of appeal is deemed to be a timely appeal from the January 27, 2003 order of the circuit court.

states a colorable claim. To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the verdict[;] however, a petitioner's conclusions need not be regarded as true. Where examination of the record of the trial court proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing. The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.

[*State v.*] *Allen*, 7 Haw.App. [89,] 92–93, 744 P.2d [789,] 792–93 [(1987)] (emphasis added).

[In this regard], the appellate court steps into the trial court's position, reviews the same trial record, and redecides the issue. Because the appellate court's determination of "whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court" is a question of law, the trial court's decision is reviewed *de novo*. *See United States v. Burrows*, 872 F.2d 915 (9th Cir.1989) (denial of a post-conviction motion based on ineffective assistance of counsel without conducting an evidentiary hearing is reviewed *de novo* for a determination of whether the files and records of the case conclusively show that petitioner is entitled to no relief). Therefore, we hold that ... the issue whether the trial court erred in denying a Rule 40 petition without a hearing based on no showing of a colorable claim is reviewed *de novo*; thus, the right/wrong standard of review is applicable.

*Dan v. State*, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994).

*Barnett v. State*, 91 Hawai'i 20, 26, 979 P.2d 1046, 1052 (1999) (some brackets added and some in original).

### D. *Ineffective Assistance Of Counsel*

In assessing claims of ineffective assistance of counsel, the applicable standard is whether, "viewed as a whole, the assistance provided [was] 'within the range of competence demanded of attorneys in criminal cases.'" *State v. Antone*, 62 Haw. 346, 348, 615 P.2d 101, 104 (1980) (citation omitted).

General claims of ineffectiveness are insufficient and every action or omission is not subject to inquiry. Specific actions or omissions alleged to be error but which had an obvious tactical basis for *benefitting* the defendant's case will not be subject to further scrutiny. If, however, the action or omission had no obvious basis for benefitting the defendant's case *and* it "resulted in the withdrawal or substantial impairment of a potentially meritorious defense," then [it] ... will be evaluated as ... information that ... an ordinary competent criminal attorney should have had.

*Briones v. State*, 74 Haw. 442, 462–63, 848 P.2d 966, 976 (1993) (emphases in original) (internal citations omitted). The burden of establishing ineffective assistance rests with the defendant and can only be met by demonstrating specific errors or omissions resulted in the withdrawal or substantial impairment of a meritorious defense.

"Determining whether a defense is 'potentially meritorious' requires an evaluation of the possible, rather than the probable, effect of the defense on the decision maker.... Accordingly, no showing of 'actual' prejudice is required to prove ineffective assistance of counsel." *Briones*, 74 Haw. at 464, 848 P.2d at 977 (citing *State v. Aplaca*, 74 Haw. 54, 73, 837 P.2d 1298, 1308 (1992)).

*State v. Poaipuni*, 98 Hawai'i 387, 392, 49 P.3d 353, 358 (2002) (quoting *State v. Pacheco*, 96 Hawai'i 83, 93–94, 26 P.3d 572, 582–583 (2001) (quoting *Dan v. State*, 76 Hawai'i 423, 427, 879 P.2d 528, 533 (1994))) (some brackets added and some in original) (some citations omitted in original).

## III. DISCUSSION

### A. The Circuit Court Did Not Err In Denying De Guair's HRPP Rule 40 Petition.

On appeal, De Guair argues that the circuit court erred in denying his Rule 40 petition because he "established error by the trial court [in] allowing his plea to withstand scrutiny for a crime [that] did not exist at the time of [his] change of plea and for ineffective assistance of counsel based upon his counsel allowing him to plead to a crime that did not exist." De Guair's argument is without merit.

■ De Guair challenges the circuit court's FOF No. 12 and its four COLs filed on April 26, 2004. He argues that by allowing him to plead to a non-existent offense, his trial counsel's advice "resulted in the withdrawal or substantial impairment of a meritorious defense[.]" De Guair's argument is mistaken. De Guair's trial counsel had obvious tactical reasons for advising him to accept a plea agreement to, *inter alia,* the lesser charge of attempted manslaughter, considering—as trial counsel advised the circuit court—that "[b]ut for the plea agreement, [De Guair] would have faced a murder in the first degree charge[.]" The assistance De Guair's trial counsel provided fell well "within the range of competence demanded of attorneys in criminal cases," and he omitted nothing that resulted "in the withdrawal or substantial impairment of a potentially meritorious defense." *See Poaipuni,* 98 Hawai'i at 392, 49 P.3d at 358. Accordingly, we hold that De Guair's allegation of error does not constitute ineffective assistance of counsel in violation of his state and federal constitutional rights.

Because De Guair's remaining point on appeal of the circuit court's denial of his Rule 40 petition is identical to that of his appeal of the denial of his Rule 35 motion, we address it *infra* in section III.B.

### B. The Circuit Court Did Not Err In Denying De Guair's HRPP Rule 35 Motion.

De Guair argues, as he does in his appeal of the circuit court's denial of his Rule 40 petition, that the circuit court erred in denying his HRPP Rule 35 motion, inasmuch as, according to De Guair, he "established an abuse of discretion by the trial court in allowing his [no contest] plea to stand to a crime [that] did not exist at the time of [his] change of plea." De Guair's sole challenge on appeal is to the circuit court's COL finding that "[t]he Defendant was properly found guilty of Attempted Manslaughter."

De Guair maintains that "[t]he plea agreement form is silent on a single fact constituting attempted manslaughter" and that, "[a]t the change of plea hearing, the intentional firing of a weapon is mentioned[,] but no where is [sic][his] state of mind mentioned or that he was under the influence of extreme mental or emotional distress." De Guair then argues that, during the relevant period, he was not under the influence of any extreme mental or emotional disturbance and that his action in shooting William Mariani was purely intentional. De Guair therefore concludes that his conviction of the offense of attempted manslaughter is unlawful, inasmuch as attempted "reckless" manslaughter does not exist, pursuant to this court's decision in *Holbron,* and there was no "factual basis" for a conviction of attempted manslaughter by virtue of extreme mental or emotional disturbance. De Guair reasons that this court must "reduce" his sentence accordingly and that "the judgment for that count must be set aside."

In *Holbron,* we held that "there can be no attempt to commit involuntary manslaughter, and, thus, under the Hawai'i Penal Code, there is no offense of attempted manslaughter by virtue of attempting recklessly to cause the death of another person." 80 Hawai'i at 33, 904 P.2d at 918. Accordingly, there is only one possible version of attempted manslaughter, *i.e.,* that "[i]n a prosecution for [attempted] murder in the first and second degrees it is a defense, which reduces the offense to [attempted] manslaughter, that the defendant was, at the time he [attempted to] cause[ ] the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation." HRS § 707–702(2).

■ De Guair does not dispute that he caused Kenneth Mariani's death and that he shot William Mariani. Moreover, he insists that he did so intentionally. Nevertheless, De Guair's insistence that he intended to shoot William Mariani does not lift his conduct out of the realm of the attempted manslaughter offense to which he entered a no contest plea. De Guair's contention that the factual basis for his plea was not indicative of attempted manslaughter by virtue of EMED assumes that a "factual basis" is "a necessary precondition to the acceptance of a no contest plea." *State v. Merino*, 81 Hawai'i 198, 215, 915 P.2d 672, 689 (1996). But, as this court discussed in *Merino*, it is not.

Nolo contendere, or "no contest," is defined as a "[t]ype of plea which may be entered with leave of court to a criminal complaint or indictment by which *the defendant does not admit or deny the charges*, though a fine or sentence may be imposed pursuant to it. The principal difference between a plea of guilty and a plea of nolo contendere is that the latter may not be used against the defendant in a civil action based upon the same acts. . . ."

[*State v.*]*Gomes*, 79 Hawai'i [32,] 33 n. 3, 897 P.2d [959,] 960 n. 3 [(1995)] (quoting Black's Law Dictionary 1048 (6th ed.1990) (citation omitted)) (some emphasis added and some deleted). By contrast, a guilty plea is a "[f]ormal *admission* in court *as to guilt of having committed [a] criminal act charged* which a defendant may make if he or she does so intelligently and voluntarily[.]" *Black's Law Dictionary* at 708 (emphases added).

*Id.* at 211, 915 P.2d at 685.

In *Merino*, the defendant Merino entered a no contest plea to conspiracy to commit first degree theft and then, after his conviction, contended on appeal that the circuit court had erred in accepting his plea because the factual basis for the plea did not show that he had engaged in conspiracy to commit first degree theft. *Id.* at 215, 915 P.2d at 689. We note that Merino's argument was that the circuit court had erroneously accepted his no contest plea because he had not in fact committed the offense to which he had pled. *Id.* at 211, 915 P.2d at 685. By contrast, De Guair argues that the offense to which he pled no contest did not exist. As we discuss *infra*, the distinction between the two arguments is without a difference with respect to the applicability of the *Merino* analysis.

■ In the present matter, as in *Merino*, De Guair "tendered, and the circuit court accepted, [a] no contest plea pursuant to HRPP Rule 11" (1996).[9] *Id.* at 215, 915 P.2d at 689.

9. HRPP Rule 11 provides in relevant part:
   (a) Alternatives.
   (1) In General. A defendant may plead not guilty, guilty or nolo contendere. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or nolo contendere or if a defendant corporation fails to appear, the court shall enter a plea of not guilty.
   . . . .
   (b) Nolo Contendere. A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.
   (c) Advice to Defendant. The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that he understands the following:
   (1) the nature of the charge to which the plea is offered; and
   (2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and

   (3) that he has the right to plead not guilty, or to persist in that plea if it has already been made; and
   (4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and
   (5) that if he is not a citizen of the United States, a conviction of the offense for which he has been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.
   (d) Insuring That the Plea Is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from any plea agreement.
   (e) Plea Agreement.
   (1) In General. The prosecutor and counsel for the defendant, or the defendant when act-

Pursuant to HRPP 11(f), which is key to Merino's appeal,

> the court is prohibited from entering judgment upon a guilty plea if it is not subjectively satisfied that there is a factual basis for the plea. The court must satisfy itself that the conduct which the defendant admits constitutes the offense charged in the indictment[, complaint,] or information or an offense included therein to which the defendant has pleaded guilty. While the factual basis may come from various sources, it must appear on the record.

*State v. Teves,* 4 Haw.App. 566, 569, 670 P.2d 834, 837 (1983) (citations and internal quotation marks omitted) (emphases added).

The absence of any reference to nolo contendere pleas in HRPP 11(f)—in the face of the express incorporation of such pleas within the scope of HRPP 11(a), (b), (c), (d), and (e)—gives rise to the question whether the circuit court was under any obligation to ascertain a "factual basis" for Merino's no contest plea to criminal conspiracy. A well settled canon of statutory construction, the history underlying the promulgation of HRPP 11(f), and the appellate case law of this jurisdiction all suggest a negative answer.

. . . [I]f this court had intended HRPP 11(f) to apply to nolo contendere pleas, it would not have expressly limited the section's subject matter to guilty pleas.

. . . HRPP 11(f) was patterned after Federal Rules of Criminal Procedure (FRCP) Rule 11(f), [*State v.*] *Medeiros,* 8 Haw.App. [39,] 43, 791 P.2d [730,] 733, [*cert. denied,* 71 Haw. 669, 833 P.2d 901 (1990),] which in turn substantially adopted the formulation recommended by the federal Advisory Committee on Criminal Rules.

At one time in the past the Advisory Committee on Criminal Rules proposed that a plea of nolo contendere not be accepted without the court first satisfying itself that the defendant committed the crime charged. This overlooked the fact that an innocent defendant may not wish to contest the charge and that the nolo plea is a means for him [or her] to do this. Accordingly that proposal was not adopted and Rule 11(f), requiring the court to determine the accuracy of a plea, applies to guilty pleas but not to pleas of nolo contendere.

1 [C.] Wright [*Federal Practice and Procedure: Federal Rules of Criminal Procedure* ] § 177, at 670–71 (footnotes omitted) (emphasis added); *see also North Carolina v. Alford,* 400 U.S. 25, 35–36 n. 8, 91 S.Ct. 160, 166–67, 27 L.Ed.2d 162 (1970) ("Throughout its history, . . . the plea of nolo contendere has been viewed not as an express admission of guilt but as a consent by the defendant that he [or she] may be punished as if he [or she] were guilty. . . . [FRCP] 11 preserves this distinction in its requirement that a court cannot accept a guilty plea 'unless it is satisfied that there is a factual basis for the plea'; there is no similar requirement for pleas of nolo contendere, since it was thought desirable to permit defendants to plead nolo without making any inquiry into their actual guilt." (Citation omitted)).

By implication, the appellate case law of Hawai'i has recognized that, as is true of FRCP 11(f), *HRPP 11(f) does not require the court to satisfy itself that there is a "factual basis" for the entry and acceptance of a no contest plea.* . . .

. . . .

*We hold that, by its plain language, HRPP 11(f) applies only to guilty pleas and that, with respect to pleas of nolo contendere (i.e., no contest), the trial court*

---

ing pro se, may enter into plea agreements that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to an included or related offense, the prosecutor will take certain actions or adopt certain positions, including the dismissal of other charges and the recommending or not opposing of specific sentences or dispositions on the charge to which a plea was entered. The court may

participate in discussions leading to such plea agreements and may agree to be bound thereby.

. . . .

(f) Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court shall not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

*is not required to make "such inquiry as shall satisfy it that there is a factual basis for the plea."* . . .

*Merino,* 81 Hawai'i at 217–19, 915 P.2d at 691–93 (footnotes omitted) (emphases added).

■ This court's holding in *Merino* therefore disposes of De Guair's argument on appeal. Inasmuch as there is no requirement that the court elicit a factual basis for a no contest plea, it matters not whether the facts laid out in De Guair's change of plea hearing failed to establish the offense of attempted manslaughter by virtue of EMED. It is sufficient that the offense of attempted manslaughter exists in any form. No more was required to convict De Guair of that offense pursuant to his no contest plea. A defendant is convicted of "attempted manslaughter," not a varietal of attempted manslaughter, such as "reckless" or "EMED." Therefore, the circuit court's conclusion that De Guair entered a "valid plea" did not "exceed[ ] the bounds of reason or disregard[ ] rules or principles of law or practice to the substantial detriment of a party litigant." *Rauch,* 94 Hawai'i 315, 322, 13 P.3d 324, 331 (citations omitted).

It is significant that De Guair received the "benefit of his bargain" and avoided a possible sentence of life imprisonment without the possibility of parole, which would have resulted from a conviction of attempted first-degree murder, by pleading no contest to the offense of attempted manslaughter. *See Merino,* 81 Hawai'i at 219, 915 P.2d at 693 ("To allow . . . [d]efendants to plead no contest in exchange for the reduction and dismissal of charges against them, and then to permit them to attack the . . . convictions achieved by those pleas, where those pleas were not conditioned upon the right to appeal, would jeopardize the integrity of the plea bargaining process." (Quoting *State v. Morin,* 71 Haw. 159, 164, 785 P.2d 1316, 1319 (1990).) (Brackets in original.) (Some ellipsis points added and some in original.)). Accordingly, we find that it "constitute[s] the

height of chutzpa[,]" *Merino,* 81 Hawai'i at 212, 915 P.2d at 686, that De Guair now challenges the circuit court's sentence and asks that this court reduce it by ten years.

We therefore hold that the circuit court correctly denied both De Guair's Rule 40 petition and his Rule 35 motion.

### IV. *CONCLUSION*

Based on the foregoing analysis, we affirm the January 27, 2003 and the April 26, 2004 orders of the circuit court.

Concurring and Dissenting Opinion by ACOBA, J.

I concur in part and dissent in part. I would affirm the April 26, 2004 order of the circuit court of the third circuit (the court) denying the Hawai'i Rules of Penal Procedure (HRPP) Rule 40 petition for post-conviction relief filed by Petitioner–Appellant Walter De Guair (Defendant) on the ground that, *inter alia,* "[i]t is appropriate for [the court] to deny Defendant's Petition for Post-conviction relief without a hearing, and to deny Defendant's Motion to Stay the [HRPP] Rule 40 Proceedings pending the outcome of the appeal of the denial of his [HRPP] Rule 35 motion." As to Defendant's HRPP Rule 35 motion, I would vacate a part of the court's January 27, 2003 order and the September 24, 2002 second amended judgment.

Inasmuch as Defendant moved under HRPP Rule 35 to reduce part of his previous sentence on the ground that he had erroneously pled no contest to attempted manslaughter in Count II of the indictment, Defendant, in effect, sought to withdraw his no contest plea. Under HRPP Rule 32(d), a "[d]efendant's post-sentence withdrawal request [is subject to the] 'manifest injustice' provision of HRPP Rule 32(d)." *State v. Fogel,* 95 Hawai'i 398, 404, 23 P.3d 733, 739 (2001). *See* HRPP Rule 32(d).[1] Manifest injustice as a matter of law applies in this case for, as indicated by Defendant, this court has said that "[Hawai'i Revised Stat-

---

1. HRPP Rule 32(d) (1999) stated:
    (d) *Withdrawal of plea of guilty.* A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspend-

ed; but to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his plea.

utes (HRS) ] § 707–702(2), manslaughter due to [extreme mental or emotional disturbance (EMED) ] is neither a chargeable offense nor a lesser included offense." *Whiting v. State*, 88 Hawai'i 356, 360, 966 P.2d 1082, 1086 (1998).[2] Petitioner, therefore, could not have pled to an "offense" of attempted manslaughter. *See State v. Holbron*, 80 Hawai'i 27, 43, 904 P.2d 912, 928 (1995) (stating that "insofar as HRS § 707–702(2) does not constitute a criminal 'offense' as such, but is a 'mitigating defense' . . . a defendant can be convicted of this form of manslaughter only if he or she is initially charged with first or second degree murder and the prosecution fails to negative the defense of '[EMED]. . . .' ").

Under the circumstances, then, the case should be remanded under HRPP Rule 32(d) for "withdrawal of the plea or enforcement of the [plea] bargain." *Fogel*, 95 Hawai'i at 406, 23 P.3d at 741. According to Defendant, however, he does not "challenge the plea agreement . . ., only the conviction for attempted manslaughter [as to which he] want[s the] conviction thrown out." But a defendant who seeks to have a plea agreement set aside must plead anew to all charges. *Cf. State v. Adams*, 76 Hawai'i 408, 415 n. 5, 879 P.2d 513, 520 n. 5 ("Of course, a defendant who elects to have a violated plea agreement rescinded must plead again to all charges in the original indictment." (Citations omitted)). Because Defendant does not wish to plead anew, the only recourse left is enforcement of the plea bargain. *Cf. Fogel*, 95 Hawai'i at 406, 23 P.3d at 741 (holding that because the "[d]efendant was not eligible for deferral of his plea[,]" plea bargain could not be enforced and withdrawal of plea was only remedy on remand for HRPP Rule 35 violation).

Of course, on remand Defendant would not be able to plead to a charge of attempted manslaughter because "inasmuch as man-

slaughter due to EMED is a *defense* not an offense, 'an alleged violation of . . . HRS § 707–702(2) obviously could not be charged as . . . manslaughter in the indictment or complaint.' " *Whiting*, 88 Hawai'i at 361, 966 P.2d at 1087 (quoting *Holbron*, 80 Hawai'i at 43, 904 P.2d at 928) (emphasis in original) (brackets omitted). Therefore, with respect to Defendant's HRPP Rule 35 motion, the court's January 27, 2003 finding no. 7 that "there is a valid *offense* of mitigated Attempted Manslaughter under the *Holbron* decision[,]" (emphasis added) and conclusion of law that "Defendant was *properly found guilty* of Attempted Manslaughter[ ]" (emphasis added) must be vacated. In that regard also, that part of the September 24, 2002 second amended judgment referring to the *"Lesser included offense* of Count 2 . . . Attempted Manslaughter" (emphasis added) must be vacated and corrected.

But as the record reflects, the stipulation in the plea agreement as to Count II was to reduce the attempted murder in the second degree charge to attempted manslaughter in order to obtain a lesser prison sentence for Defendant. Thus, "Defendant received the benefit [of the] . . . 10 years . . . in Count 2" for which he had bargained. Hence, to enforce the plea agreement as to the ten-year sentence would be consonant with the ultimate intent of the parties. Enforcement of the plea agreement is permissible as long as the disposition reflected the proper legal premise for a ten-year term, *i.e.*, that Defendant pled in accordance with HRS § 707–702(2) which allows as a *defense* that murder be reduced to manslaughter, and as coincident with this case, that attempted murder be mitigated to attempted manslaughter. *See Holbron*, 80 Hawai'i at 43, 904 P.2d at 928 ("Although a defendant charged with attempted murder may, pursuant to HRS

---

**2.** HRS § 707–702 (1993) stated as follows:

    (1) A person commits the offense of manslaughter if:

        (a) He recklessly causes the death of another person; or

        (b) He intentionally causes another person to commit suicide.

    (2) In a prosecution for murder in the first and second degrees it is a defense, which reduces the offense to manslaughter, that the

defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

    (3) Manslaughter is a class B felony.

§§ 705–500 and 707–702(2), be *convicted* of attempted manslaughter based upon [EMED], the [Hawai'i Penal Code] does not recognize the offense of attempted manslaughter based upon a defendant's reckless conduct[.]" (Emphasis omitted.) (Emphasis added.)). The findings of fact, conclusions of law, order as to the HRPP Rule 35 motion and second amended judgment, then, must reflect such a disposition.

For the foregoing reasons, on remand the court must be instructed that its January 27, 2003 finding no. 7, conclusion of law, and order must indicate that Defendant pled in accordance with a defense that would reduce the attempted murder charge to "attempted manslaughter" pursuant to HRS § 707–702(2). In that light, I would affirm that part of the court's January 27, 2003 HRPP Rule 35 order denying reduction of sentence but vacate that part of the order denying amendment of the first amended judgment and vacate that part of the September 24, 2002 second amended judgment referring to the "[l]esser included offense of Count 2: Attempted Manslaughter ([HRS §§ ] 705–500(1)(b) & 707–702(2))" with instructions to substitute appropriate language therefor.